UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

U.S. DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

NOV 30 2005

FILED

UNITED STATES OF AMERICA

v.               Cr. No.   05-238-01-JD

CONTINENTAL INDUSTRIES, INC.

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) and (C) of the Federal Rules of Criminal Procedure, the United States of America, by its attorney, Thomas P. Colantuono, the United States Attorney for the District of New Hampshire, and the defendant, Continental Industries, Inc. ("Continental" or "the corporation"), and its attorney, David A. Vicinanzo, enter into the following Plea Agreement:

1. **The Plea and Offense**.

Continental agrees to plead guilty to making a false statement to the United Department of Homeland Security, U.S. Immigration and Customs Enforcement ("ICE"), an agency of the United States Government, in violation of Title 18, United States Code, Section 1001. Continental's scienter is premised on the "corporate collective knowledge" doctrine. See United States v. Bank of New England, 821 F.2d 844, 856 (1st Cir. 1987).

In exchange for corporation's agreement to plead guilty:

a. the United States Attorney's Office ("the government"), ICE and the United States Department of Commerce ("Commerce Department") agree to make a written recommendation to the United States Department of State ("State Department") that Continental should not be prohibited or barred from exporting its products to other countries;

   b. the government, ICE and the Commerce Department agree to make a written recommendation to the Department of Defense that Continental should not be prohibited or barred *from* obtaining contracts to manufacture and produce products for the Department of Defense; and

   c. the government agrees to recommend that the court impose the criminal sentence described in ¶7 of this Agreement.

2. **Elements of the Offense**.

Continental understands that if this case proceeded to trial the government would be required to prove the following three (3) elements beyond a reasonable doubt:

  **First**, that Continental, acting through the "collective knowledge" of several of its employees, knowingly made a material false statement;

  **Second**, that Continental made the statement voluntarily and intentionally; and

  **Third**, that the statement was made to an agency of the United States government, ICE.[1]

3. **Offense Conduct**.

The government proffers that the offense occurred as follows:

  From approximately 1975 to February 2003, Continental manufactured wire rope ("cable") for commercial customers and the United States military. One particular cable part was specifically designed to link

---

[1] <u>First Circuit Pattern Jury Instructions, Criminal Cases</u>, § 4.08 (1998 ed.). <u>See also</u> <u>United States v. Bank of New England</u>, 821 F.2d 844, 856 (1st Cir. 1987)("collective knowledge of multiple employees can establish "knowledge" of a corporation).

the cockpit controls of F/4 Phantom aircraft to the aircraft's stabilizers.

Almost all of Continental's sales were to domestic customers. On occasion, Continental would export a product on an ad hoc basis. Less than 1% of the corporation's sales were to overseas customers.

In February 2003, Special Agents for ICE were conducting a nationwide campaign, known as "Shield America," to educate companies, like Continental, about the export restrictions imposed by the Arms Export Control Act and other federal export control laws.

Using "Shield America" as a pretense for the visit, on February 13, 2003, Special Agents for ICE met with Continental's general manager at Continental's office in Hinsdale, New Hampshire. During that meeting Continental's general manager told the Special Agents for ICE that approximately twenty percent (20%) of Continental's products were manufactured for the Department of Defense and that Continental is one of only a few sources of cables for the Department of Defense. The general manager also indicated that Continental had/did not directly ship items it manufactured for the Department of Defense to a location in another country.

Contrary to Continental's general manager's statement to the ICE agents, Continental acting through numerous corporate employees had, in fact, shipped defense items abroad on the following two occasions:

    a.   on March 6, 2002, Continental sold and directly shipped ten (10) cables to an entity in the United Kingdom, Multicore, LTD; and

    b.   on December 30, 2001, Continental sold and directly shipped approximately fifty (50) cables to Ruf S Lopez/Winter Aircraft Co. ("Lopez"), d/b/a an entity located in Madrid, Spain.

4. **Penalties**.

Continental understands that the maximum penalties for the

offense are:

    A.    a fine of $500,000 or twice the gross gain obtained by the offense or twice the gross loss caused by the offense, whichever is greater (18 U.S.C. § 3571(c));

    B.    a five (5) year period of probation (18 U.S.C. §3561(c)(1);

    C.    a possible additional fine to pay the costs to the government of probation (U.S.S.G. § 5E1.1(I)); and

    D.    a mandatory special assessment of $100.00, which Continental agrees to pay at or before the time of sentencing.

5. **Sentencing and Application of the Sentencing Guidelines**.

Continental understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The corporation further understands that it has no right to withdraw its guilty plea if the applicable advisory guideline range or its sentence is other than what it anticipated.

The corporation also understands that the United States and the United States Probation Office shall:

    A.    Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

    B.    Respond to questions from the Court;

    C.    Correct any inaccuracies in the pre-sentence report; and/or

    D.    Respond to any statements made by Continental, its employees, officers, agents and/or its lawyer(s) to a probation officer or to the Court.

Continental also acknowledges that any estimate of a sentence, or the probable sentencing range pursuant to the Sentencing

Guidelines that may have been provided by any source, is only a prediction and not a promise, and is not binding on the government, the Probation Office, or the Court. Furthermore, except as provided in this Agreement, the corporation understands that it will not be allowed to withdraw its guilty plea in the event the sentencing range or the actual sentence imposed by the Court is higher than the corporation hopes or expects.

6. **Acceptance of Responsibility**.

The government agrees that it will not oppose an appropriate reduction in Continental's Adjusted Offense Level, under the Sentencing Guidelines, based upon the corporation's apparent prompt recognition and affirmative acceptance of responsibility for the offense. The government, however, may oppose any adjustment for Acceptance of Responsibility if:

    A.    Continental fails to admit a complete factual basis for the plea at the time it is entered;

    B.    denies involvement in the offense, gives conflicting statements about that involvement, or is untruthful with the Court, the government or probation officer;

    C.    obstructs or attempts to obstruct justice, prior to sentencing;

    D.    if any of its employees, officers or agents ("the corporation's representatives") have engaged in conduct prior to signing this agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and the corporation has failed to fully disclose such conduct to the government prior to signing this agreement;

    E.    fails to appear in court as required;

    F.    after signing this agreement, engages in additional criminal conduct; and/or

G.   attempts to withdraw its plea of guilty.

Continental understands that the Court is under no obligation to reduce the offense level if it finds that the corporation has not accepted responsibility.

7. **<u>Stipulations and Other Agreements</u>**.

### A. Binding Sentencing Stipulation

In light of the fact that Continental has no previous history of unlawful conduct, and it has implemented an effective program to prevent and detect violations of law, the government and Continental agree, pursuant to Fed. R. Crim. P. 11(c)(1)(C), that the appropriate sentence to be imposed in this case is a fine of $4,500, and that a period of probation should not be imposed.

The government and Continental understand and agree, that if the sentencing court does not accept this sentencing recommendation, Continental will be permitted to withdraw its plea of guilty. Continental understands and agrees that it will not be permitted to withdraw its guilty plea for any other reason.

### B. Non-Binding Sentencing Agreements

Pursuant to Fed. R. Crim. P. 11(c)(1)(B) and U.S.S.G. §6B1.4, the government and Continental agree that:

   a. that the base offense level for the offense is six (6), pursuant to U.S.S.G. §2B1.1(a); and

   b. that no downward or upward sentencing departures are applicable to this case.

Continental understands that the sentencing court is not bound by the foregoing agreements but with the aid of a pre-sentence

report, will determine the facts relevant to sentencing. Continental understands that if the sentencing Court does not accept the foregoing agreements, such rejection by the Court will not be a basis for Continental to withdraw its plea of guilty.

Nothing herein shall be construed to limit the right of either party to appeal the sentence pursuant to 18 U.S.C. §3742.

8. **Restitution**.

The parties agree that restitution is not an issue in this case. See 18 U.S.C. §3663.

9. **Waiver of Trial Rights and Consequences of Plea**.

Continental understands that it has the right to be represented by an attorney at every stage of the proceeding. Continental also understands that it has the right it has the right:

    A.   to plead not guilty or to maintain that plea if it has already been made;

    B.   to be tried by a jury and, at that trial, the right to the assistance of counsel;

    C.   to confront and cross-examine witnesses against the corporation;

    D.   not be compelled to provide testimony that may incriminate the corporation; and

    E.   to compulsory process for the attendance of witnesses to testify in the corporation's defense.

Continental understands that by pleading guilty the corporation waives and gives up those rights and that if a plea of guilty is accepted by the Court, there will not be a trial of any kind.

Continental understands that if the corporation pleads guilty, the Court may ask the corporations representatives about the offense, and if the corporation's representatives answer any of those questions falsely under oath, on the record, and in the presence of counsel, their answers may later be used to prosecute the corporation and/or the corporation's representatives for perjury or making false statements.

10. **Acknowledgment of Guilt; Voluntariness of Plea**.

   Continental acknowledges that it:

   A.  is entering into this Plea Agreement and is pleading guilty freely and voluntarily because the corporation is guilty;

   B.  is entering into this Plea Agreement without reliance upon any discussions with the United States and without promise of benefit of any kind except as described in this Plea Agreement;

   C.  is entering into this Plea Agreement without threats, force, intimidation, or coercion of any kind;

   D.  understands the nature of the offense to which the corporation is pleading guilty, including the penalties provided by law; and

   E.  is completely satisfied with the representation and advice received from the corporation's undersigned attorney.

11. **Scope of Agreement**.

   Continental acknowledges and understands that this Agreement is limited to the undersigned parties and cannot bind any other federal authority, or any state or local authority.  The corporation acknowledges that no representations have been made to it with respect to any civil or administrative consequences that may result from this plea of guilty, because such matters are

solely within the discretion of the specific administrative or governmental entity involved. Finally, the corporation acknowledges that this agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving it.

12. **Satisfaction of Federal Criminal Liability; Breach**.

Continental's guilty plea, if accepted by the Court, will satisfy any federal criminal liability of the corporation and the corporation's representatives in the District of New Hampshire as a result of the corporation's and the corporation's representative's participation, if any, in the conduct which forms the basis of the Information in this case.

Continental also understands that if, before sentencing, the corporation or the corporation's representatives violate any term or condition of this Agreement, engages in any criminal activity, or fails to appear for sentencing, the government may void this Agreement. Should either party violate the terms of this Agreement, the other party shall have the option of declaring the Agreement null and void.

13. **Waivers**.

    A.   **Appeal and Collateral Review.**

Continental is aware that the corporation has the right to challenge its sentence and guilty plea on direct appeal. Continental is also aware that the corporation may, in some circumstances, be able to argue that its guilty plea should be set aside, or its sentence be set aside or reduced, in a collateral

challenge (such as pursuant to a motion under 28 U.S.C. § 2255 or § 2241).

By entering into this Plea Agreement, the corporation knowingly and voluntarily waives any right to appeal or to collaterally challenge:

1. its guilty plea and any other aspect of its conviction, including, but not limited to, any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues; and

2. the imposition by the Court of a sentence which does not exceed the sentence recommended by the United States, even if the Court rejects one or more positions advocated by the government or Continental with regard to the application of the advisory Sentencing Guidelines.

Continental's waiver of rights to appeal and to bring collateral challenges shall not apply to appeals or challenges based on new legal principles in First Circuit or Supreme Court cases decided after the date of this Plea Agreement which are held by the First Circuit or Supreme Court to have retroactive effect. Continental's waiver of the right to collateral review does not extend to claims that the plea was unknowing or involuntary or to claims that the corporation received ineffective assistance of counsel in the negotiation of the plea or plea agreement.

This Plea Agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b), and the United States therefore retains its appeal rights.

B. **Freedom of Information and Privacy Acts.**

Continental hereby waives all rights, whether asserted

directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

14. **No Other Promises**.

Continental acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

15. **Final Binding Agreement**.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by Continental's president, Robert Harcke, and Continental's lawyer and by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

16. **Agreement Provisions Not Severable**.

The United States and Continental understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

Thomas Colantuono
United States Attorney


By: _____     11/30/05
Robert M. Kinsella                  (Date)
Assistant U.S. Attorney
55 Pleasant St., 3rd Floor
Concord, NH 03301
(603) 225-1552


    I hereby certify that I have read this 12-page Plea Agreement and, on behalf of Continental Industries, Inc., I fully understand and accept its terms.


_____          11/30/05
**Tyler Esche**, General Manager    (Date)
Continental Industries, Inc.


    I have read and explained this 12-page Plea Agreement to the Continental's General Manager, Tyler Esche, and he has advised me, on behalf of Continental Industries, Inc., that he understands and accepts its terms.


_____          11/30/05
**David A. Vicinanzo**              (Date)
Attorney for Continental Industries, Inc.